Stephen A. PAOLI and Arthur Paoli, co-partners, d/b/a Arthur Paoli & Son, and Zipout, Inc., Plaintiffs-Appellees,

v.

MARSHALL FIELD & COMPANY, Defendant-Appellant.

No. 11578.

United States Court of Appeals Seventh Circuit.

June 15, 1956.

William J. Stellman, Bradford Wiles, Dalbert U. Shefte, Chicago, Ill., for defendant-appellant.

Richard Russell Wolfe, Jarrett Ross Clark, Edward B. Holt, Chicago, Ill., for plaintiffs-appellees, Carlson, Pitzner, Hubbard & Wolfe, Chicago, Ill., of counsel.

Before DUFFY, Chief Judge, and LINDLEY and SWAIM, Circuit Judges.

DUFFY, Chief Judge.

This is a patent infringement suit. The partnership of Arthur Paoli & Son is the owner of, and Stephen Paoli is the patentee in United States Patent No. 2,552,450. Zipout, Inc. is the licensee which makes and sells "Zipout" shrimp shelling and deveining tools under the patent. Defendant is charged to have infringed said patent by the sale of "Shrimpmaster" shrimp shelling and deveining devices. The District Court held Claims 1, 2, 6, 7, 10, 12 and 13 of the Paoli patent in suit were valid and were infringed by defendant.

The application for the patent in suit was filed on June 2, 1949, with claims directed both to the shrimp cleaning tool and to a method of cleaning shrimp. The Patent Office required that the two types of Claims be divided, and Paoli filed a divisional application on the method which was issued as Patent No. 2,594,205. The present suit involves only the article patent, No. 2,552,450.

Shrimp have been widely used as food since ancient times. Many millions of pounds of shrimp are now eaten annually. A shrimp is curved from head to tail with legs located along the inside of the curve. The alimentary canal, or sand vein, of the shrimp runs along the center line of the back just inside the shell. For centuries shrimp have been laboriously cleaned by hand. The customary method has been by cutting off the head followed by peeling the shell and then slitting the back of the shrimp with a knife and scraping out the sand vein. Thus, cleaning a batch of shrimp was a time-consuming process. The District

Court found there was a long felt need for a simple, effective shrimp-cleaning tool. When Stephen Paoli started his experiments, and during the course thereof, there was no such tool on the market.

The application for the patent in suit was not attended with a series of rejections as is so often the case with present-day patent applications. No rewording of the claims was required except to divide between the tool and the method. Commercial success was immediate, sales running from 6,684 to 9,654 a month in 1952. Although the cost to manufacture was small, the price of $2.00 for the plastic model and $7.50 for the metal model did not chill the wide-spread demand. As the District Court pointed out, the long margin of profit was a powerful temptation for the copyist.

The District Court found that Paoli spent two and one-half years from the time he first hit upon the idea of working on the inside of a shrimp to shell and devein the same until he produced the patented tool. During that period, he carved out numerous experimental models and cleaned hundreds of pounds of shrimp. The Court found that the tool was more than a routine development. In its decision the court said: " * * * this Court is impressed with the fact that plaintiff's patent and device, in spite of its simplicity, was the first to solve an age-old problem."

As described in the patent, and as shown in the drawings of the patent, plaintiff's device includes a curved prong portion, a wedging or camming portion and a handle. The prong portion forms the forward end, the wedging portion the central portion, and the handle the rear portion of the tool.

On its claim of invalidity defendant urges that plaintiff merely used an old device for a new purpose, and that this was not invention. Defendant urges plaintiff's device is merely a wedge used for a particular purpose, and says that an old device cannot be repatented simply because someone has discovered that it can be put to an additional use or can perform an additional task.

We agree that a new application of an old device may not be patented, if the result claimed as new is the same in character as the original result. Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 91, 62 S.Ct. 37, 86 L.Ed. 58; Blake v. San Francisco, 113 U.S. 679, 683, 5 S.Ct. 692, 28 L.Ed. 1070. However, we do not think this principle is applicable to the device of the patent in suit. Defendant also urges that a baling hook or an ice pick could be used for opening and cleaning shrimp, and that the claims in suit read on these tools. We do not agree.

Paoli combined a prong, a wedge and a handle. But he did more. He combined a specific prong with a specific wedge. The prong is inserted into the sand vein of the shrimp and scrapes out the vein. It is followed by the wedge which, as it enters the vein channel, by exerting a progressively increasing pressure, breaks the shell and forces the shrimp meat intact from the shell. In a single quick movement plaintiff's device shells and deveins the shrimp.

The record contains substantial evidence to support the findings of the District Court upholding the validity of the claims in suit. Expert witnesses testified at the trial; experiments were performed in the presence of the Court. Pertinent here is the statement in Graver Tank & Mfg. Co., Inc., v. Linde Air Products Co., 336 U.S. 271, 274, 69 S.Ct. 535, 537, 93 L.Ed. 672; "Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides in part: 'Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.' To no type of case is this last clause more appropriately applicable than to the one before us, where the evidence is largely the testimony of experts as to which a trial court may be enlightened by scientific demonstrations."

Defendant has reasserted here the same prior art that it advanced at the trial. We think the trial court covered the situation adequately in its finding of fact No. 8 which we approve and which reads: "The array of old patents offered by defendant as anticipations attest the diligence of search, and reassures the Court that the prior art is really as barren as the Patent Office itself found it to be. These patents run the gamut from a tire iron to a tenaculum, taking in a nasal speculum, a dilator and a catheter on the way. Of the two which even mention shrimp cleaning, one describes a complex power driven machine while the other (Danish patent No. 49,-725) shows a curved steel needle capable merely of digging out bits and chunks of shrimp from a shell in the manner of a nut pick."

The trial court also found: "From the admissions of defendant's own expert in reference to these patents, and his admission that in previous retainer on shrimp cleaning problems, he had nothing better to suggest than the old hand cleaning then being employed, the Court concludes that even a man scientifically qualified in food handling would have found in these patents no inspiration for the reconstruction of any of this grab-bag of tools to transform them into the patented shrimp cleaner." We hold the claims in suit are valid.

In arguing the Shrimpmaster device does not infringe, defendant asserts there is no similarity of principle in operation of the Zipout device and the Shrimpmaster device—that Zipout is a wedge and Shrimpmaster is a lever. Defendant insists that the two are in no way mechanically equivalent to each other. The upper portion of the Shrimpmaster device is very similar to the prong and the wedging portion of the Zipout device. A slight difference is that there are teeth at the end of the prong. In addition, Shrimpmaster has a lever device beneath the prong and by squeezing the handles together the lower section which is pivoted on the upper section, opens, and defendant describes it as a jaw.

The Court made the following findings which we think have substantial support in the evidence:

"14. The accused tool, the Shrimpmaster, operates with a wedging action to remove the meat of the shrimp from the shell. The insertion of the tool preparatory to pulling the so-called trigger or lever wedges the meat from the shell to such an extent that the trigger performs merely an idle function. This is especially true when the directions contained on the instruction card which accompanies the tool are followed. * * *

"15. As the prong of the Shrimpmaster tool is inserted in a shrimp, it scrapes the sand vein from the vein channel. The scraping occurs during the same movement which wedges the meat from the shell. Thus, the Shrimpmaster shells and deveins shrimp in a single stroke.

"16. The wedging action and the scraping of the sand vein are the same with the Shrimpmaster tool as they are with the Zipout tool. The two tools operate in an identical manner."

We think there is sufficient credible evidence to sustain the Court's findings of infringement. Experiments were conducted in the presence of the Court using only the curved upper prong of the Shrimpmaster and the wedging action thereof removed the meat without making any use whatsoever of the lower or lever portion. By means of charts and transparencies it was demonstrated the manufacturers of Shrimpmaster used exactly the same curve in the upper prong of their device as had been and was being used in Zipout.

No evidence was introduced to show that the Shrimpmaster was derived from the prior art, independent experiment or from any other source than the Paoli patented tool. We agree with the trial

court that it is a fair inference that the accused tool had its origin in the device manufactured under the Paoli patent in suit.

Judgment affirmed.